UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ANNA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-cv-00213-RLY-MPB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 12). Plaintiff Anna B.[1] seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 11, Docket No. 16, Docket No. 17). It is recommended that the District Judge **REMAND** the decision of the Deputy Commissioner of the Social Security Administration finding that Plaintiff is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## Introduction

Plaintiff, Anna B., protectively filed her applications for Title II and Title XVI on March 7, 2014, and December 4, 2014, for disability and disability insurance benefits, alleging disability beginning December 16, 2013. (Docket No. 7-5 at ECF p. 2; Docket No. 7-5 at ECF p. 7).

Her claim was denied initially and upon reconsideration. (Docket No. 7-4 at ECF p. 4; Docket No. 7-4 at ECF p. 14). Administrative Law Judge Stuart T. Janney (ALJ) held a hearing on September 29, 2016, at which Anna B., represented by counsel, and a vocational expert (VE) Leslie F. Lloyd, appeared and testified. (Docket No. 7-2 at ECF pp. 39-62). After the hearing, on October 4, 2016, the ALJ sent interrogatories to the VE, which were then proffered to Plaintiff's counsel on October 26, 2016. Counsel submitted additional questions to the VE, the response of which were entered on December 7, 2016. (Docket No. 7-2 at ECF p. 11). On February 24, 2017, the ALJ issued an unfavorable decision. (Docket No. 7-2 at ECF p. 8). The Appeals Council denied review on November 21, 2017. (Docket No. 7-2 at ECF p. 2). On December 22, 2017, Anna B. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Deputy Commissioner denying her benefits.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind

of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ— not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Anna B. was 49 years of age at the time she applied for DIB and SSI alleging she could no longer work. (Docket No. 7-2 at ECF p. 21). However, the claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563, 20 C.F.R. § 416.963) prior to the ALJ's decision's issuance. (Docket No. 7-2 at ECF p. 22).

Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019 (Docket No. 7-2 at ECF p. 13) and has not engaged in substantial gainful activity since December 16, 2013, the alleged onset date. (Docket No. 7-2 at ECF p. 13).

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and 416.920(a) [2] and ultimately concluded that Anna B. was not disabled. (Docket No. 7-2 at ECF p. 23). The ALJ found that Anna B. met the insured status requirement through December 31, 2019.[3] (Docket No. 7-2 at ECF p. 1). At step one, the ALJ found that Anna B. had not engaged in substantial gainful activity.[4] *Id*. At step two, the ALJ found that she had the following severe impairments: "degenerative disc disease; level one obesity; mood disorder; major depressive disorder; generalized anxiety disorder; and personality disorder; not otherwise specified." (Docket No. 7-2 at ECF p. 14). At step three, the ALJ found that she did not have an

---

[2] The regulations governing disability determinations under Titles II (disability insurance benefits) and XVI (supplemental security income) of the Social Security Act are identical in virtually all relevant respects, and this Entry will cite only the Title II regulations, found in subpart P of the regulations at Part 404 (20 C.F.R. § 404.15xx). The corresponding Title XVI regulations are found in subpart I of the regulations at part 416 (20 C.F.R. § 416.9xx).

[3] A claimant must have disability insured status when they become disabled; Anna B. must prove the onset of disability on or before the date she last met the insured status requirements (the date last insured or "DLI") to be eligible for benefits. *See* 20 C.F.R. § 404.131.

[4] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 7-2 at ECF pp. 14-16). After step three, but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can understand, remember, and carry out rote or routine instructions or tasks that require the exercise of little independent judgment or decision making at a consistent pace over the course of a workday, but not if the tasks are complex.

(Docket No. 7-2 at ECF p. 16).

At step four, the ALJ concluded that the claimant is unable to perform any past relevant work. (Docket No. 7-2 at ECF p. 21). At step five, the ALJ indicated the claimant was 49 years old (younger individual) on the alleged disability onset date and subsequently changed age category to closely approaching advanced age. (Docket No. 7-2 at ECF pp. 21-22). Moreover, the ALJ concluded that Anna B. has a limited education, completing the 9th grade, and an ability to communicate in English. (Docket No. 7-2 at ECF p. 2). The ALJ then found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded she would still be able to perform the jobs of Hotel cleaner, Dining room attendant, Mailroom clerk, Laundry worker, and Cashier. (Docket No. 7-2 at ECF pp. 22-23).

## II. Review of Plaintiff's Assertions of Error

### A. Irritable Bowel Syndrome (IBS)

Anna B. argues that the ALJ erred at Step 2 in failing to find her Irritable Bowel Syndrome as a severe impairment. Plaintiff contends that had the ALJ failed to list her IBS as a "severe" impairment but then still imposed reasonable restrictions supported by the record of

6

fecal incontinence, such an omission would be harmless—however, such limitations were not imposed. (Docket No. 11 at ECF p. 5). The Commissioner argues that Plaintiff has failed to meet her burden of proving that any particular impairment with her IBS was severe or that it caused any work-related limitations.

The ALJ is required to determine at step two of the sequential analysis whether the claimant in fact has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The burden is on the claimant to prove that the impairment is severe. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe."). Thus, the step two determination of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999).

However, the ALJ must account for each limitation supported by substantial evidence in his RFC finding—whether that limitation sources from a severe or non-severe impairment. S.S.R. 96-3p. But, Plaintiff has the initial burden of proving the impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

Although the ALJ found that Anna B. had numerous severe impairments, his findings also indicated that her irritable bowel syndrome was not severe because it was well controlled with Bentyl and did not significantly limit Plaintiff's ability to perform work related activities.

7

(Docket No. 7-2 at ECF p. 14). The Court finds the ALJ's discussion deficient because it relies on treating physician Dr. Broshears's September 2015 note that Plaintiff was "doing much better with her [irritable bowel syndrome] symptoms . . . bentyl seems to be helping a great deal." (Docket No. 7-11 at ECF p. 22). However, the ALJ failed to acknowledge later evidence of the record that would support the Plaintiff's complaint and may have impacted the ALJ's findings, either at Step two or prior to Step four in assessing Plaintiff's severe and non-severe impairments as applied to her residual functional capacity. For instance, on July 18, 2016, Anna B. presented to Nurse Practitioner Aaron Holderman complaining of "issues with diarrhea and rushing to the bathroom with occasional fecal incontinence if someone is in the bathroom." (Docket No. 7-9 at ECF p. 26). Nurse Practitioner Holderman's Plan indicated "[s]chedule colonoscopy for **change** in bowel habits and diarrhea." (Docket No. 7-9 at ECF p. 92) (emphasis added). The nurse practitioner reiterates that Anna B. "has **change** in bowel habits with diarrhea and [he] [w]ill arrange for colonoscopy." (Docket No. 7-9 at ECF p. 92) (emphasis added).

On August 1, 2016, Anna B. presented to Dr. Rusche for a repeat colonoscopy (her last colonoscopy was performed seven years prior). (Docket No. 7-9 at ECF p. 88). The indications included a change in bowel habits and diarrhea. *Id.* Dr. Rusche's findings indicated two polyps (1 mm and 4 mm) were removed, but that the colonoscopy was otherwise normal. *Id.* Then, at the September 26, 2016, hearing Anna B. testified as follows:

> Q. Okay. Some of your medical records indicate that you have some problems with diarrhea. Is that still present?
>
> A. Yeah. I still have problems with that.
>
> Q. Do you know approximately how often you have to go to the bathroom?
>
> A. I never know for sure when it's going to hit me. I don't know, I think it's something to do with some kind of food. I don't know

8

>>if it's a different kind of medication but, sometimes I could eat some cereal and about a half hour to a hour later, I'm rushing in there to use the restroom.
>
>>Q. Okay. And there's, is there, and I guess, based on what you said, there's not much warning, then, before you have to go?
>
>>A. Oh, no.
>
>>Q. Okay.
>
>>A. No. No, my stomach's just upset, you know, and I got to go and then, it, I'm in there about at least ten minutes.

(Docket No. 7-2 at ECF pp. 51-52).

While the ALJ relies on Dr. Broshears's September 2015, finding to conclude that Plaintiff's IBS is "well controlled" (Docket No. 7-2 at ECF p. 14, citing Docket No. 7-11 at ECF p. 22), later unaddressed medical records, as well as Plaintiff's own testimony, noted complications unaddressed by the ALJ.

The Commissioner argues that no reviewing or examining medical source suggested a limitation based on Plaintiff's irritable bowel syndrome. (Docket No. 16 at ECF p. 10). However, each reviewing or examining medical source's assessment was done prior to Nurse Practitioner Holderman's July 2016 report: Dr. Harden's consultative examine, July 2014; Dr. Corcoran's state agency initial review, July 2014; Dr. Shah's Office of Quality Review, October 2014; Dr. Small's state agency reconsideration review, January 2015. (Docket No. 7-8 at ECF pp. 59-61; Docket No. 7-3 at ECF pp. 13-22; Docket No. 7-3 at ECF p. 22; Docket No. 7-3 at ECF p. 7-6 at ECF p. 45; Docket No. 7-3 at ECF pp. 35-44). Thus, the Court does not find this argument persuasive. Moreover, the ALJ himself noted that "medical records indicate[d]" Plaintiff had problems with diarrhea at the hearing and then the Plaintiff agreed that those were problems she currently still experienced. (Docket No. 7-2 at ECF p. 51).

9

The Commissioner is correct to note that, because the ALJ recognized other severe impairments, he was obligated to proceed with the evaluation process. (Docket No. 16 at ECF p. 8). However, even if the IBS was not classified as severe, the ALJ had a duty to still consider its effects on Plaintiff when assessing her Residual Functional Capacity. *See* S.S.R. 96-3p. While the RFC assessment generally indicated that the ALJ considered all of Anna B.'s medically determinable impairments, the aforementioned 2016 records were not addressed. Given these 2016 records contradicted earlier records that the ALJ did rely on, the Court cannot conclude that the ALJ's finding at Step Two did not affect the outcome of this case. Remand is required to ensure that all of the evidence was adequately considered and that the Step 2 and, subsequently, that the RFC analysis fully reflected all of the supported limitations.

### B.  Residual Functional Capacity

Having concluded that remand is necessary, the Court need not fully resolve Anna B.'s additional arguments concerning her RFC, the evaluation of the medical opinion evidence, and the evaluation of her subjective complaints—but, in the interest of completeness and providing guidance on remand, the Court will offer some discussion.

Anna B. concedes she does not dispute the ALJ's non-exertional limitations, but that she does dispute the exertional limitations that she can perform light work. (Docket No. 11 at ECF p. 7). The ALJ assessed Plaintiff with the RFC for light work, defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." (Docket No. 7-2 at ECF p. 10). *See* 20 C.F.R. § 404.1567(b). Plaintiff argues that the ALJ should have assessed her as capable of no more than sedentary work, defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." (Docket No. 11 at ECF p. 6). *See* 20 C.F.R. § 404.1567(a). Anna B.'s main arguments are

that the ALJ's standing/walking restrictions were not supported by substantial evidence as the ALJ improperly assigned "little weight" to consultative examiner's, Dr. Harden, opinion and the ALJ improperly evaluated Plaintiff's subjective complaints.

To begin, Anna B. argues that the ALJ erroneously concluded that because she "reported that she was capable of performing what amounted to light work shortly after her fusion surgery, she must, therefore, be only limited to light work now," ignoring that chronic conditions often wax and wane. (Docket No. 11 at ECF p. 7, citing Docket No. 7-2 at ECF pp. 17-19). And while it is true that "[a] condition which was tolerable at one time can deteriorate to the point that it becomes intolerable," *Johnson v. Califano*, 572 F.2d 186, 188 (8th Cir. 1978), here the ALJ does not make a conclusion that merely because Plaintiff indicated she could return to light work in March 2014, she was capable of light work in February 2017. Instead, Anna B.'s March 2014 report to Dr. Chou is summarized in the three-pages of the ALJ's decision dedicated to review of Anna B.'s exertional-related medical records. The Court finds no error here.

Plaintiff asserts that the ALJ improperly discounted consultative examiner's, Dr. Harden, opinion, which was one of the two opinions in the record that limited Plaintiff to sedentary work. After his July 2014 exam, Dr. Harden opined:

> [T]he claimant could lift up to 10 pounds in an eight-hour day occasionally and could also carry up to 10 pounds occasionally. The claimant could sit continuously with frequent breaks and could stand frequently with frequent breaks. The claimant could walk occasionally. The claimant could walk up and down steps occasionally and could climb ladders and scaffolds on a limited basis. Pushing and pulling could be done occasionally but stooping, squatting, kneeling and crawling should be avoided. The claimant had a back brace that seemed medically necessary.

(Docket No. 7-2 at ECF p. 18 (internal citations omitted), citing Docket No. 7-8 at ECF pp. 60-61). The ALJ assigned "little weight" to this opinion because, particularly, it was

11

"inconsistent with the claimant's recitation of her ability to sit, stand and walk for periods of 2 or more hours at a time as of the time of the consultative examination" and because it "contradicted [ ] the objective medical evidence, [ ] include[ing] references to [Anna B.'s] normal gait, full range of motion in her spine, 5/5 strength in her lower extremities, an updated x-ray of [Anna B.'s] lumbar spine that shows no change since 2014," and because the claimant indicated during the hearing she no longer needed to wear the brace that Dr. Harden deemed was medically necessary. (Docket No. 7-2 at ECF p. 18).

      SSR 96-8p requires that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *7. The agency's regulations require an ALJ to weigh opinion evidence, "[r]egardless of its source," with consideration of several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability ("we will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim"), consistency, and specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 835 (7th Cir. 2014). "But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Id.*, citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record[.]").

12

The ALJ reasonably found that Dr. Harden's opinion was inconsistent with Plaintiff's own recitation of her abilities during her consultative exam. Plaintiff told Dr. Harden that she could lift 20 pounds once and 10 pounds repetitively, yet without explanation, Dr. Harden limited Plaintiff to lifting/carrying 10 pounds occasionally. (Docket No. 7-8 at ECF p. 59; Docket No. 7-8 at ECF p. 61). Plaintiff reported to Dr. Harden that she could walk up to four hours before having to sit and could stand up to three hours before having to sit. Moreover, she could sit for two hours before having to move. (Docket No. 7-8 at ECF p. 59).[5] Despite these reports, Dr. Harden opined that Plaintiff could walk only occasionally (Docket No. 7-8 at ECF p. 61). As the ALJ noted, Dr. Harden's exam findings did not align with his opinion as other than a reduced lumbar range of motion, Plaintiff's other ranges of motion were normal, as were her joints, motor strength, sensation, gait, and tandem walking. (Docket No. 7-2 at ECF pp. 17-19, citing Docket No. 7-8 at ECF p. 60). Moreover, the ALJ correctly noted that Dr. Harden's opinion was contradicted by Dr. Broshears's May 2016 treatment notes, indicating that he found Plaintiff's cervical, thoracic, and lumbar spine normal on exam. (Docket No. 6-2 at ECF pp. 17-

---

[5] The Commissioner argues that adding up the hours that Plaintiff reported, she would be able to stand/walk for a total of seven hours—meeting the requisite six hours stand/walking required for light work. (Docket No. 16 at ECF p. 11). Plaintiff asserts that such a position was explicitly rejected by this Court in a recent decision when it noted "[i]f a human is walking, then he is standing. If [Plaintiff[ . . . can stand for only four hours, then one cannot add another four hours of walking—that would equate to eight hours of standing . .." *Dunn v. Berryhill*, Case No. 4:16-cv-00208-DML-SEB, 2018 WL 1391370, at *4 (S.D. Ind. Mar. 20, 2018). Maybe so, but Plaintiff's argument ignores the record here. In Dunn, the record the Court was analyzing was the physician's opinion that the Plaintiff could "stand, sit or walk for four hours in an eight-hour working day intermittently." *Id.* at *1. Here, Dr. Harden noted Anna B. "reports that she could walk about 3 to 4 hours before having to sit and can stand about 2 to 3 hours before having to sit." (Docket No. 7-8 at ECF p. 59). Thus, these ranges were not the maximum that could be completed in an eight-hour working day, but merely the maximum Plaintiff indicated she could do before she needed to change positions—thus, *Dunn* does not directly apply.

13

18). Finally,[6] the ALJ found Dr. Harden's opinion unreliable because he opined that Plaintiff's back brace was medically necessary, whereas Plaintiff herself testified that she had only really needed the brace at the time of her back surgery and had not used it in a while. (Docket No. 7-2 at ECF p. 18; Docket No. 7-2 at ECF p. 59).

Plaintiff finds the ALJ's treatment of the consultative examiner's findings particularly troubling because Dr. Corcoran, a state agency physician, initially found Plaintiff could only do unskilled sedentary work, but after her file was selected for an Office of Quality Review (OQR) review, Mr. Corcoran's opinion changed to light work without basing the change on new evidence or some new rationale. While on remand it may be prudent for the ALJ to address Dr. Corcoran's shifting opinion, as only the earlier opinion is currently addressed, the Court does not find the contradiction to impact the ALJ's treatment of Dr. Harden's opinion for the reasons the Court discussed earlier.

Plaintiff also critiques the ALJ's evaluation of her subjective complaints. An ALJ's evaluation of a claimant's subjective symptoms is entitled to great deference and should be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently

---

[6] Plaintiff also challenges the ALJ's interpretation of an August 2016 x-ray report, arguing that the report's comment that "[t]here is also seen to be chronic degenerative loss of disc space height at L5-S1. This is likewise unchanged," should have been interpreted that the continuous loss of disc space is unchanged not that the condition is unchanged from the previous, 12/5/2014 x-ray. (Docket No. 11 at ECF p. 10). The ALJ's interpretation of the x-ray report appears to be more logical considering the prior impression indicated "the appearance is **unchanged from 12/5/2014**" (Docket No. 7-9 at ECF p. 63), but given remand is recommended for this case on a separate issue, the Court encourages the ALJ to clarify this issue. Nonetheless, even without relying on this finding, the ALJ provided several sound reasons for discounting Dr. Harden's opinion as discussed.

14

wrong."). The ALJ did not equate Plaintiff's activities to fulltime work activity and did not put undue weight on Plaintiff's activities. *See Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013). The Court does note that some later evidence showed a reduction of daily activities, such as testimony that Anna B. no longer watches her grandchildren, and on remand the ALJ should address these reductions. (Docket No. 7-2 at ECF pp. 52-53).

Plaintiff contends that the ALJ reversibly erred by rejecting her pain allegations because they were not supported by objective evidence. (Docket No. 11 at ECF p. 11). However, "[o]bjective medical evidence . . . is a useful indicator to assist [ ] in making reasonable conclusions about the intensity and persistence of [ ] symptoms and the effect those symptoms, such as pain, may have on [one's] ability to work." 20 C.F.R. § 404.1529(c)(2). Moreover, the lack of corroboration by objective evidence is far from the only factor the ALJ relied on in his subjective symptom evaluation.

Plaintiff argues that Dr. Broshears's discharge of Plaintiff from his pain-management care was "irrelevant." (Docket No. 11 at ECF p. 12). However, as this Court has previously held it is reasonable that the ALJ relied on the evidence from Dr. Broshears regarding the likelihood that Plaintiff was selling, and not taking, at least some of her prescribed medication to undermine Plaintiff's allegation of disabling pain. (Docket No. 7-2 at ECF p. 18). *See Campbell v. Barnhart*, No. 4:04-cv-202-WGH-DFH, 2005 WL 4881106, at *5 (S.D. Ind. Oct. 9, 2005) ("As for her drug seeking behavior, multiple doctors noted it as a possibility, including one doctor who dismissed himself as [Plaintiff's] treating physician because there were reports of her selling her pain medications. It was not patently wrong for the ALJ to infer, given the doctors' observations, that at least some of her medical visits were driven by drug seeking behavior.").

Given the recommendation to remand the case, we need not and do not hold that the ALJ's findings regarding Dr. Harden's opinion were not supported by substantial evidence nor that his credibility determination was patently wrong. We do, however, suggest the ALJ further develop the record in the areas addressed above.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 11) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 22nd day of January, 2019.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.